ERNEST BERGEMANN AND HERBERT MARCKWARDT V. THE STATE.

No. 16193,  Delivered February 7, 1934.
Rehearing Denied March 14, 1934.
Reported in 69 S. W. (2d) 113.

The opinion states the case.

*Schleyer & Luckett,* of New Braunfels, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for theft of cattle; punishment, two years in the penitentiary.

Mr. Word lived eighteen miles west of New Braunfels, in Comal county, and had a large pasture in which were a number of cows and calves. He had missed several head. The substance of his testimony is that about 7 or 8 P. M. on Monday, September 26, 1932, as he was going home from New Braunfels he overtook these two appellants who were riding in a gray Chandler car, in which witness had often seen them together before. Noting particularly both the car and its two occupants, Mr. Word followed along behind them until they came to a fork in the road. They took the left-hand going toward Boerne, and witness took the right-hand going toward his home on the Blanco road. His ranch extended from the Blanco road across to the Boerne road. After eating supper witness saddled his horse and rode over his pasture, and as he was riding near the Boerne road he saw appellants in the same car but headed toward New Braunfels. This was about 10 P. M. Witness stayed along this fence for an hour but saw nothing. About

11 P. M. he went home and went to bed out in his yard, leaving his horse saddled. Later he was awakened by the sound of a shot coming from the direction of where he had seen appellants on the Boerne road. He at once got on his horse and rode in that direction. He said he had an eight months old calf with its mother in said pasture; that the calf had on a small brass bell attached to a leather collar. Witness rode fast and got to his fence near where he had seen appellant earlier and saw them again. Marckwardt was getting through said fence, and Bergemann was between the car and the fence, on the outside of the fence. As witness rode up they got in their car,—the same gray Chandler,—and drove off. The next morning witness went back over in his pasture and saw the cow, the mother of the calf which had been wearing the bell, and she was bawling as if for her calf and her bag appeared full of milk. Witness could not find the calf. It had been with its mother just before that. He said it had been raining and the ground was soft. The next day he found the entrails and remains of the stomach of an animal which appeared to be those of a calf. They were found some two hundred yards from where he had seen appellant Marckwardt get through the fence on Monday night. Not far from the animal's remains he found the bell and collar referred to which had been on his calf. The collar was cut through. Near the remains of the calf he found tracks of two men, one set going to the remains and the other returning to the fence, at the point where he had seen said parties, passing a soft muddy place in the ground. Near these tracks just inside his fence he found a bloody cloth on the ground. Just outside the fence at the point to which the tracks went, car tracks were observed. Mr. Bremer was with witness and testified to the finding of the remains of the calf, the tracks and the cloth.

Word further testified that after finding the things above mentioned, he phoned for the officers Marion and Faust, who came out, looked at the entrails, tracks, etc. Witness then filed complaint against appellants, and went with officer Schleyer who arrested both of said appellants, Marckwardt first and then Bergemann. At Bergemann's they found the gray Chandler car in which Mr. Word said he had seen appellants three times on Monday night. They drove this car back to New Braunfels. They found in the car a headlight with a large reflector four or five inches across, also an electric light bulb, and a long wire to attach same to the car which had a socket to fit said headlight. It was in testimony this headlight would throw a beam of light fifteen hundred feet in such manner as would blind the eyes of

animals. They also found in said car a pair of muddy shoes, a large rope, and a piece of cloth about 18 by 14 inches, same being a piece of ticking with white and blue stripes. From one side of this cloth a piece had been torn. The piece of cloth found by witness in his pasture, as above set out, was shown to be the same kind of cloth as that found in Bergemann's car, the stripes and torn edges of the two pieces of cloth exactly fitted. Blood was on the piece of cloth found in the pasture, but no blood on the piece found in the car.

Officers Schleyer, Faust and Marion corroborated Mr. Word in testimony as to what was found in appellant Bergemann's gray Chandler car; as to the tracks found in Word's pasture leading to where the remains of the calf were and back from there to the fence where the car tracks were noted. Mr. Schleyer testified that one of these auto tracks were made by a tire which would make diamond shaped impressions, and on Bergemann's car was such a tire; also on the rope found in said car there was blood and animal hair; also that he measured the tracks in Word's pasture going from and to where the calf remains were found and compared same with the muddy shoes found in Bergemann's car and they were about the same. The defense was an alibi, appellants introducing several witnesses who testified that both appellants were in San Antonio on the night of September 26th, and also on Friday night, September 23rd. These facts were testified to by both appellants. The state attacked some of these witnesses and introduced testimony showing that both appellants were in the neighborhood of Word's pasture also on Friday night, September 23rd.

Appellants asked a number of special charges, all of which seem to have been given. We find nothing in the exceptions to the court's charge, all of which have been examined. Appellants have an able brief, in the light of which their bills of exception have been considered.

The original indictment appearing to be lost, was properly substituted, but being found during the trial, was thereafter used. We think the peremptory instruction to acquit, properly refused. We have set out the facts at some length above to demonstrate that there was support in testimony for the conclusion of guilt.

Bill of exception 6 sets out a page of the testimony of Mr. Word, a part of which was clearly admissible and not subject to the general objection and exception appearing in said bill, in effect, that said testimony was too remote, irrelevant, incompetent and immaterial. Authorities are cited holding such exceptions not available. Vaughn v. State, 102 Texas Crim. Rep.,

618; Vargas v. State, 104 Texas Crim. Rep., 283; Arredondo v. State, 106 Texas Crim. Rep., 78; White v. State, 113 Texas Crim. Rep., 257. "Too remote, immaterial, etc., are terms too general." Eads v. State, 76 Texas Crim. Rep., 647; Middleton v. State, 86 Texas Crim. Rep., 307; Smith v. State, 92 Texas Crim. Rep., 300.

Bill of exceptions 7 sets out objection to the cross-examination of defense witness Dorrough as to his indictment and plea of guilty to the offense of theft in 1925. The qualification of the trial judge upon this bill shows that the material part of said testimony was given without objection, and that part of the remainder was volunteered by said witness. We are unable to appraise what is left of such a bill which does not set out a single question to whose answer objection upon specific ground was made; but which does set out more than a page of the testimony of the witness on cross-examination, and then without enumeration of any surrounding facts avers that such testimony was objected to as "Too remote, as eliciting details, irrelevant, immaterial and prejudicial." See Young v. State, 94 Texas Crim. Rep., 195; Blackmon v. State, 95 Texas Crim. Rep., 116; Benson v. State, 95 Texas Crim. Rep., 311; Smith v. State, 96 Texas Crim. Rep., 28.

Bill of exceptions 9 sets out objection to the testimony of officer Schleyer who swore in rebuttal that he measured the tracks of the person in Word's pasture at the point referred to, and that same were compared with the size of the muddy shoes found in Bergemann's car and were about the same. The objection was much as appears in other bills, viz.: incompetent, irrelevant and immaterial and not in rebuttal. The testimony was clearly in rebuttal of the testimony of both appellants who swore that they were not in Word's pasture that night, but were in San Antonio. The shoes referred to were found in Bergemann's car which appellants said they drove to San Antonio on said night, but which Mr. Word swore was occupied by them on said night at his pasture.

Bills of exception 10 and 11 relate to testimony offered by the state in rebuttal, showing that appellants in said gray Chandler car, were in the vicinity of Word's pasture on the night of September 23rd, at a time when both appellants had sworn they were in San Antonio, and had supported such claim by the testimony of other alibi witnesses. Both bills are subject to the criticism that no facts are stated in support of the objections made which would enable us to properly appraise such objections. However, we regard the testimony as both material and admissible. This was a case of circumstantial evi-

dence. The fact that appellants were in the neighborhood of Word's pasture at night, at or about the time that he was missing cattle, might be a material circumstance for consideration of the jury.

Bill of exceptions 12 makes complaint of certain argument set forth as being prejudicial. Just why, is not made to appear. The complaint was not of the form of language used, but of a reference to certain testimony. There is nothing in the bill from which we might know that said testimony was not given or that it was not material, or that it was an argument which was in any way improper.

The same criticism appearing above in our discussion of bill of exceptions No. 12, holds good in reference to bill of exceptions No. 13, complaining of argument of the prosecuting attorney. The ground of objection was that the argument was prejudicial, and that the court refused to instruct the jury not to consider it. No facts appear in the bill from which we may be led to believe that the testimony was not properly before the jury, and that the argument was not in reference thereto.

Bill of exceptions No. 14 also sets out argument of the prosecuting attorney, in substance, that appellants had been running around with the man who furnished them their chief alibi testimony in this case, and upon whose testimony they relied for a verdict of acquittal, who had been convicted of theft in 1925. There is nothing in the bill to show that the argument was not a proper deduction from the facts before the jury. In fact as we look at the testimony, the argument appears to be entirely supported by such facts.

Bill of exceptions No. 15 also complains of argument of Mr. Blundell, prosecuting attorney, same being a reference to the fact that defense witness Dorrough was convicted of theft in 1925, and that at that time Marckwardt was associating with Dorrough in business and other transactions. As we view the record, the argument was supported by the testimony, and we see no ground for objection or exception.

Bill of exceptions 16 complains of argument of the county attorney criticising appellants because the mother of appellant Bergemann was not put upon the stand and examined. It appears from the bill that Mrs. Bergemann was present in attendance at court, and we think the criticism of the argument is without foundation. It is made to appear that when the prosecuting attorney began to criticise appellants for their failure to use said witness, the defense attorney arose from his place at the bar and said that she was present and the state

could use her if they wanted to. We do not think the bill presents any error.

Bill of exceptions 17 sets out a lengthy argument of prosecuting attorney, which is qualified by the statement of the trial court that said attorney did not make some of the arguments alluded to as hurtful, and that in the opinion of the trial court the language used was justified by the testimony. No showing is made in the bill of any sufficient reason why this court should hold that the trial court exceeded the discretion confided in him in such matters.

Bill of exceptions 19 complains of the refusal of the court to grant appellant a new trial on the ground of the insufficiency of the testimony. We have reviewed the testimony carefully in the light of appellant's able brief, and are of opinion that it is amply sufficent to justify the conclusion of guilt.

Bill of exceptions 20 is also qualified to show that the testimony of Mr. Word, complaint of which appears in said bill, was offered by the state as an explanation of other testimony elicited from said witness upon cross-examination by the appellants.

We have given this case as careful consideration as we have been able, and find no error in same for which a reversal should be ordered. The judgment will be affirmed.

*Affirmed.*

## ON APPELLANT'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellants particularly complain of the disposition made of their bill of exception No. 6. In Branch's Ann. Tex. P. C., sec. 211, the rule is stated thus: "A bill of exception is too general to be considered if it includes a number of statements, some of which are clearly admissible, and there is nothing in the objections to directly challenge or single out the supposed objectionable evidence." Many cases are cited supporting the text, among them being Tubb v. State, 55 Texas Crim. Rep., 606, 117 S. W., 858; see, also, the late case of Cadle v. State, 57 S. W. (2d) 147. In addition to what was said in our original opinion regarding bill No. 6 we observe that appellant's brief proceeds as though the complaint was of the admission of evidence that Word had lost other cattle prior to September 26th. There is set out in said bill, together with other things, the testimony of Word on the point mentioned. However, we observe from the statement of facts that some of his evidence on the point is not embraced in the bill of exception and is as follows: "I handled my cattle myself. I rode the pastures at nights numbers of times. I knew my cattle and knew when any of them were missing, and I had ridden the

pasture prior to September 26, 1932, at nights looking for lost and missing cattle." It does not appear that the evidence quoted was objected to. It apparently put before the jury without objection the information complained of so seriously in briefing the point.

We have again examined the other bills which appellants in their motion urge as having been incorrectly disposed of. We do not feel called upon to discuss them further as it will result largely in a repetition of what has already been said.

Believing the case has been properly disposed of, we are constrained to overrule the motion for rehearing, and it is so ordered.

*Overruled.*